**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID NNADIOTU AMADIOHA,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO A. RUBIO,<br><br>*Defendant*. | Civil Action No. 25 - 3273 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Nnadiotu Amadioha brings this action against Defendant Marco A. Rubio, in his official capacity as Secretary of State, alleging that the Secretary unlawfully denied his application for a U.S. passport. Mr. Amadioha brings claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, the Due Process Clause of the Fifth Amendment, and the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* ECF No. 1 ¶¶ 19-45, *id.* at 9-10. Before the court is the Secretary's motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 11. For the reasons explained below, the court denies the Secretary's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Mr. Amadioha's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Mr. Amadioha was born in Atlanta, Georgia on June 30, 1988. ECF No. 1 ¶ 1. The State of Georgia issued him a "Certificate of Live Birth" the following month under the name David Nnadiotu Amadioha. *Id.*

¶¶ 8-9; *see* ECF No. 1-2, at 2.[1] One year later, Mr. Amadioha's mother successfully applied for a U.S. passport on his behalf. ECF No. 1 ¶ 10. That same year, Mr. Amadioha and his mother moved to Nigeria to reunite with his father. *Id.* ¶ 11.

The Amadioha family then changed their surname to "Hmadioha" and used that name in all subsequent identity documents. *Id.* Mr. Amadioha did not learn of his U.S. citizenship until he was around eighteen years old, in approximately 2006, at which time his parents explained that he had been born in the United States and gave him his Georgia birth certificate. *Id.* ¶ 13. At some point, Mr. Amadioha relocated to Belgium but, due to "clerical errors," his Belgian identity documents list Nigeria as his place of birth and 1989 as his birth year. *Id.* ¶ 12.

In 2019, Mr. Amadioha applied for a new U.S. passport at the U.S. Embassy in Lagos, Nigeria. *Id.* ¶ 14. The Embassy denied his application due to the discrepancy between the surname on his Georgia birth certificate and the surname on his Nigerian and Belgian identity documents. *Id.*; *see* ECF No. 1-2, at 6 (concluding that Mr. Amadioha "ha[d] not satisfactorily established [his] identity"). In its denial letter, the Embassy explained that Mr. Amadioha had submitted "insufficient [evidence] to establish by a preponderance of the evidence that [he was] entitled to a U.S. passport." ECF No. 1-2, at 6.

In October 2022, Mr. Amadioha filed a second passport application at the U.S. Embassy in Brussels, Belgium. ECF No. 1 ¶ 15. One year later, that Embassy requested that Mr. Amadioha "provide secondary evidence of birth in the United States" in addition to the Georgia birth certificate that he had originally submitted. ECF No. 1-2, at 4; *see* 22 C.F.R. § 51.42(b) (listing documents that may help establish the birth of someone unable to submit a birth certificate that

[1] When citing ECF No. 1-2, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

meets the regulatory requirements). Mr. Amadioha provided his Nigerian and Belgian identity documents, "corroborative evidence of the 1989 [U.S.] passport issuance," photographs, and a "Certificate of Individuality" from the Nigerian Embassy in Brussels, ECF No. 1 ¶¶ 15-16, which confirmed that "David Nnadiotu Amadioha" and "David Nnadiotu Hmadioha" are "the same person," ECF No. 1-2, at 8. The U.S. Embassy denied Mr. Amadioha's second passport application in February 2023. ECF No. 1 ¶ 17. In its denial letter, the Embassy stated: "Although you have submitted additional documentation, the evidence received is not sufficient to establish your [U.S.] citizenship." ECF No. 1-2, at 4.

In September 2025, Mr. Amadioha filed this action, alleging that the Secretary's denial of his passport application violated the APA and the Fifth Amendment and seeking relief under the Declaratory Judgment Act. ECF No. 1 ¶¶ 30, 38, 44. In February 2026, the Secretary filed a motion to dismiss Mr. Amadioha's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 11. The motion is fully briefed. ECF Nos. 11, 12, 16.

## II. LEGAL STANDARD

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III. DISCUSSION

The Secretary argues that the court should dismiss each of Mr. Amadioha's three counts. First, the Secretary asserts that Mr. Amadioha fails to state a claim under the APA because the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, supplies an adequate alternative remedy that displaces relief under the APA. ECF No. 11, at 5-9; *see* 5 U.S.C. § 704 (providing judicial review of administrative action only where "there is no other adequate remedy in a court"). Second, he contends that Mr. Amadioha fails to state a due process claim because he received sufficient process. ECF No. 11, at 10-11. Finally, the Secretary maintains that Mr. Amadioha fails to state a claim under the Declaratory Judgment Act because that statute does not confer an independent basis for jurisdiction. *Id.* at 11. The court addresses each argument in turn.

### A. Administrative Procedure Act (Count I)

The Secretary argues that Mr. Amadioha's APA claim fails because a person "adversely affected . . . by agency action" may seek judicial review only where there is "no other adequate

remedy," 5 U.S.C. §§ 702, 704, and, here, 8 U.S.C. § 1503(b) and (c) provide an alternative mechanism for a person outside of the territorial United States to obtain review of his passport denial. ECF No. 11, at 5-9. Mr. Amadioha responds that the recourse available under Sections 1503(b) and (c) is inadequate and thus does not displace his claim under the APA. ECF No. 11, at 6-10. The court agrees with Mr. Amadioha and will deny the Secretary's motion to dismiss Count I.

Section 704 restricts APA claims to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This limit "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). At the same time, courts should avoid reading Section 704 "to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.* Accordingly, '[w]hen considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)).

"Because [S]ection 704 requires only an *adequate* alternative, '[the D.C. Circuit] has held that the alternative remedy need not provide relief *identical* to the relief under the APA,'" so long as it offers "relief of 'the same genre.'" *Id.* at 1245 (quoting *Garcia*, 563 F.3d at 522); *see El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005). That said, "doubtful and limited relief . . . is not an adequate substitute for review" under the APA. *Bowen*, 487 U.S. at 901; *see Zeevi v. U.S. Dep't of State*, 832 F. Supp. 3d 67, 73-74 (D.D.C. 2026). Nor is relief that requires a plaintiff to undergo a "process [that] can

be arduous, expensive, and long." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601 (2016).

To determine whether Sections 1503(b) and (c) of the INA preclude APA review of the denial of Mr. Amadioha's passport application, the court begins by outlining the processes for seeking review of a passport denial under the INA. Section 1503 permits an individual denied "a right or privilege as a national of the United States" on the basis that he "is not a national of the United States" to seek review of that denial. 8 U.S.C. § 1503(a). But the process for seeking review differs substantially depending on whether individual is in the United States or not. A putative citizen "within the United States" may "institute an action" in federal district court "against the head of such department or independent agency for a judgment declaring him to be a national of the United States." *Id.* In contrast, a putative citizen outside the United States, like Mr. Amadioha, must first submit an "application to a diplomatic or consular officer of the United States in the foreign country in which he is residing" in order to request "a certificate of identity." *Id.* § 1503(b). If the putative citizen successfully obtains a certificate of identity, he must then travel to a port of entry and apply for admission to the United States. *Id.* § 1503(c).[2] While applying for admission, the putative citizen is "subject to all the provisions of [the INA] relating to the conduct of proceedings involving [noncitizens] seeking admission to the United States," *id.*, including immigration detention, *see id.* § 1225. If the Attorney General determines that the putative citizen is not a U.S. citizen and thereby "not entitled to admission," the individual's only available option for judicial review is to file a petition for a writ of habeas corpus challenging the

---

[2] The consular officer's denial of a certificate of identity is appealable only to the Secretary. 8 U.S.C. § 1503(b).

Attorney General's denial of admission. *Id.* § 1503(c).[3] But if the putative citizen is admitted to the United States, he may then institute an action under Section 1503(a) for judicial review of the denial of his passport. *See id.*

The Secretary contends that Sections 1503(b) and (c) provide an adequate remedy and thereby displace Mr. Amadioha's APA claim, relying primarily on *Xia v. Tillerson*, 865 F.3d 643 (D.C. Cir. 2017), and *Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018). ECF No. 11, at 5-9. The court finds *Xia* inapt and *Hinojosa* unpersuasive. In *Xia*, plaintiffs who resided in the United States, but outside the District of Columbia, brought suit in this district challenging the revocation of their passports under the APA, the Fifth Amendment, and Section 1503. 865 F.3d at 646-48, 655-56. The D.C. Circuit held that "the District of Columbia [wa]s the wrong venue for [the plaintiffs'] section 1503 action," *id.* at 656, and remanded "for further consideration of the APA claims, or for transfer of those claims together with the section 1503 claims to the correct venue," *id.* at 658. The Secretary relies on the D.C. Circuit's offhand comment that "section 1503 provides plaintiffs an adequate avenue to assert . . . citizenship claims." ECF No. 11, at 6 (alteration in original) (quoting *Xia*, 865 F.3d at 655). That remark is dicta, but it is also irrelevant because the plaintiffs were already in the United States and proceeding under Section 1503(a), not Sections 1503(b) and (c). *Xia*, 865 F.3d at 655; *see* ECF No. 11, at 7. Accordingly, neither the D.C. Circuit nor the district court in *Xia* had the opportunity to address whether the process under Sections 1503(b) and (c)—the process applicable to those, like Mr. Amadioha, who are putative

---

[3] It appears that the Attorney General's authority under Section 1503(c) may have been transferred to the Secretary of Homeland Security as part of the Homeland Security Act of 2002, Pub. L. No. 107-296, § 451(b)(5), 116 Stat. 2135, 2196. *See* 6 U.S.C. § 271(b). For clarity and consistency with earlier cases, the court will refer to the relevant decision-maker as the "Attorney General."

citizens *outside* the United States—was adequate. *See generally Xia*, 865 F.3d 643; *cf. Xia v. Kerry*, 73 F. Supp. 3d 33, 45-46 (D.D.C. 2014) (holding in the alternative that the plaintiff "likely would be precluded from [an APA] claim" because Section 1503(a) "permits citizens to have an Article III court adjudge their citizenship status *de novo* if it is questioned"). This court thus concludes that the D.C. Circuit's decision in *Xia* "sheds no light on whether [Sections] 1503(b) and (c) provide adequate relief for persons outside the United States." *Zeevi*, 832 F. Supp. 3d at 77; *see Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 7-8 (D.D.C. 2019) (same).

In *Hinojosa*, meanwhile, the Fifth Circuit concluded that the mechanism under Sections 1503(b) and (c) "provides a direct and guaranteed path to judicial review." 896 F.3d at 312. The Fifth Circuit reasoned that any remedy under the APA would be "duplicative" because Sections 1503(b) and (c) provide a putative citizen "two bases for reaching the courts to remedy their claims"—either filing a habeas petition if denied admission or instituting an action under Section 1503(a) if admitted. *Id.* And although the Fifth Circuit recognized that a plaintiff "might not receive judicial review under the statute" if the Secretary denies a certificate of identity, the Fifth Circuit deemed this risk insufficient to render the remedy inadequate. *Id.* The Secretary contends that the court should adopt as persuasive the Fifth Circuit's reasoning. *See* ECF No. 11, at 7-8. The court is not persuaded.

To begin, relief under Sections 1503(b) and (c) is "doubtful and limited," *Bowen*, 487 U.S. at 901, not "guaranteed," *Hinojosa*, 896 F.3d at 312, as the Secretary suggests, *see* ECF No. 11, at 7-8. A plaintiff like Mr. Amadioha would first need to obtain a certificate of identity from a consular officer; if the consular officer were to deny his request for a certificate, the plaintiff's only recourse would lie with the Secretary. *See supra* n.2. If the Secretary were to affirm the denial, then the plaintiff would reach a "dead end[]" without any possibility of judicial review of

the denial of his passport application. *Zeevi*, 832 F. Supp. 3d at 75.[4] Even if the plaintiff were to obtain a certificate of identity, he would still need to seek admission into the United States at a port of entry. *See* 8 U.S.C. § 1503(c). If the Attorney General were to deny him admission, his only recourse would be to file a petition for habeas corpus, which does afford judicial review, but only of the Attorney General's determination regarding admissibility, not of the underlying passport denial. *See id.* This process provides no guarantee that Mr. Amadioha will obtain review of his underlying passport denial; rather, there are several "dead ends" that each may independently foreclose him from seeking review of the denial of his passport application. *See Sackett*, 566 U.S. at 128 (noting that [t]he remedy for denial of action that might be sought from one agency does not ordinarily provide an 'adequate remedy' for action already taken by another agency"); *see also Zeevi*, 832 F. Supp. 3d at 75 (rejecting the government's adequacy argument because a plaintiff "stuck in one of [Sections 1503(b) and (c)'s] cul-de-sacs" only obtains review "of a different agency's denial of another application —whether for a certificate of identity or for admission into the United States"); *Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 17 (D.D.C. 2020) (concluding that "[Section] 1503(b) and (c) offer [a plaintiff] only 'doubtful and limited relief' that might well never result in a determination of the underlying legal question: is [he] a citizen?" (quoting *Garcia*, 563 F.3d at 522)).

---

[4] The Secretary suggests that a plaintiff may sometimes be able to sue under the APA after the Secretary has affirmed the denial of a certificate of identity. ECF No. 11, at 7 & n.3; ECF No. 16, at 2 & n.1; *see Hinojosa*, 896 F.3d at 312 (observing that a plaintiff whose certificate of identity is "denied by the Secretary . . . would be entitled to relief under the APA"). This suggestion is hard to square with the Secretary's position that Sections 1503(b) and (c) wholly preclude APA review. But to the extent that the Secretary suggests that the denial of a certificate of identity is final agency action reviewable under the APA—and even assuming that position were correct—Sections 1503(b) and (c) would still bear hallmarks of inadequacy because the judicial review in question would not be of the challenged agency action (the passport denial), nor would it reduce the risks and expense associated with proceeding under the INA.

Separately, the road to relief under Sections 1503(b) and (c) is too "arduous, long, and expensive" to displace APA review. *See Hawkes*, 578 U.S. at 601. Even if Mr. Amadioha were to successfully obtain a certificate of identity, he would have to travel to a port of entry and seek admission—a costly, long, and arduous endeavor. What is more, the Secretary admits that Mr. Amadioha risks detention if he presents at a port of entry for admission. *See* ECF No. 11, at 9 (citing 8 U.S.C. § 1225). The costs and risks of pursuing a citizenship determination under Sections 1503(b) and (c) are independently sufficient to render them inadequate for purposes of displacing the APA. As the Supreme Court explained sixty years ago, "nothing in the statutory language, in the legislative history, or in [the Court's] prior decisions" indicates that, "despite the liberal provisions of the Administrative Procedure Act, Congress intended that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States." *Rusk v. Cort*, 369 U.S. 367, 375 (1962), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *cf. Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967) (explaining that plaintiffs need not "risk serious criminal and civil penalties" to have the opportunity to appeal an agency decision), *abrogated on other grounds by Califano*, 430 U.S. 99.

Rather than responding to the uncertain nature and arduous process of obtaining relief under Sections 1503(b) and (c), the Secretary primarily takes issue with Mr. Amadioha's and other courts' reliance on the Supreme Court's decision in *Rusk*. *See* ECF No. 11, at 9; ECF No. 16, at 3. The court would reach the same conclusion whether it treated *Rusk* as controlling or merely persuasive. But, at a minimum, the Supreme Court's analysis in *Rusk* bolsters the court's conclusion that Sections 1503(b) and (c) are an inadequate alternative remedy. In *Rusk*, the government had argued that the INA "provide[s] the exclusive procedure under which" a person

in Mr. Amadioha's shoes may "attack the administrative determination that he [i]s not a citizen." 369 U.S. at 370. The Court explained that the INA's use of the permissive "may" throughout Section 1503 indicated that Congress did not intend for its remedies to be exclusive. *Id.* at 375 (quoting 5 U.S.C. § 1503(b), (c)). It concluded that Congress enacted the review mechanism under Sections 1503(b) and (c) not to "foreclose lawsuits by claimants . . . who do not try to gain entry to the United States before prevailing in their claims of citizenship," but rather to "cut off" individuals who sought "to gain fraudulent entry [in]to the United States" under an earlier statutory scheme. *Id.* at 379. The Court also noted that the INA's procedures for a person seeking entry to the United States "would culminate in litigation not against the Secretary of State whose determination is [] being attacked [under the APA], but against the Attorney General." *Id.* at 375; *see Sackett*, 566 U.S. at 127. Although the Secretary is correct that the Court in *Rusk* did not expressly assess whether Sections 1503(b) and (c) of the INA displaced Section 704 of the APA, *see* ECF No. 16, at 3, the Court applied the same test, asking whether Congress had provided "clear and convincing evidence" of its intent to render "the broadly remedial provisions of the [APA] . . . unavailable to review administrative decisions under the [INA]," *Rusk*, 369 U.S. at 379-80; *see Citizens for Resp. & Ethics in Wash.*, 846 F.3d at 1244 (instructing courts to "look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review" under Section 704 (quoting *Garcia*, F.3d at 523)). *Rusk* thus bolsters this court's conclusion that the Secretary has failed to provide "clear and convincing evidence" of legislative intent for Sections 1503(b) and (c) to foreclose APA review.

The Secretary further seeks to distinguish *Rusk* on the basis that the plaintiff there had been indicted and "face[d] certain arrest" if he were to return to the United States. ECF No. 11, at 9; *see* ECF No. 16, at 3; *see also Hinojosa*, 896 F.3d at 313-14 (distinguishing *Rusk* because "the

path to judicial review for the Plaintiffs is far less treacherous [than in *Rusk*] because neither has been criminally indicted and thus does not risk incarceration upon arrival"). The Fifth Circuit's factual distinction is non-responsive to this court's conclusions about Congress's intent. Although the plaintiff in *Rusk* faced more certain and more severe penalties than Mr. Amadioha might, the risk of civil immigration detention, along with the costly and lengthy journey that Mr. Amadioha must make to the United States to present himself at a port of entry, suffice to establish that the review process under Sections 1503(b) and (c) is too "arduous, long, and expensive," *Hawkes*, 578 U.S. at 601, to displace APA review. In sum, the procedure under Sections 1503(b) and (c) for individuals outside the United States to seek review of a passport denial is not an adequate alternative judicial remedy under the APA. Because the Secretary raises no other arguments challenging Mr. Amadioha's APA claim, the court will deny the motion to dismiss Count I.

### B. Procedural Due Process (Count II)

The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "'The fundamental requisite of due process of law is the opportunity to be heard' at 'a meaningful time and in a meaningful manner.'" *Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd.*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). When evaluating a procedural due process claim, the court must "first determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993). If so, the court evaluates whether the deprivation of that interest occurred without sufficient process. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *see*

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (explaining that the process due is "flexible and calls for such procedural protections as the particular situation demands").

The freedom to travel internationally is an "aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment," so the government may regulate passports only "within the bounds of due process." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (quoting *Califano v. Gautier Torres*, 435 U.S. 1, 4 n.6 (1978)). The Secretary does not dispute that the Fifth Amendment requires the government to provide a citizen with some process before denying him a passport. *See generally* ECF Nos. 11, 16. Instead, the Secretary argues that Mr. Amadioha "fails to identify any process he was due that the Department failed to provide." ECF No. 11, at 10. The court disagrees.

Neither the Supreme Court nor the D.C. Circuit has articulated precisely what process is due before the denial of a passport. In *Haig*, the Supreme Court held that the process afforded to the petitioner before the revocation of his passport—"a statement of reasons and an opportunity for a prompt postrevocation hearing"—was constitutionally sufficient, but the Court expressly reserved the question whether those procedures were constitutionally required. *Id.* at 310 & n.62. Here, Mr. Amadioha contends that the Secretary "failed to provide a reasoned explanation" for the February 2023 denial of his passport application or to "provide [him] with an opportunity to contest or clarify [the agency's] concerns before the decision became final." ECF No. 1 ¶ 36; *see id.* ¶¶ 37-38. Although Mr. Amadioha disclaims any entitlement to a "trial-type hearing" or "administrative appeal mechanism," he argues that the Secretary was required to provide a "meaningful statement of reasons adequate to permit a meaningful response." ECF No. 12, at 11.

The Secretary responds that, because Mr. Amadioha "submitted multiple passport applications and was permitted to submit additional information in support of his application"

before it was denied, he was afforded a sufficient opportunity "to address the agency's concerns before . . . a decision on his passport application was issued." ECF No. 16, at 5 (citation omitted); *see* ECF No. 11, at 10. But that is non-responsive to Mr. Amadioha's argument, which is that the ultimate denial letter failed to explain "the adverse inference" that the agency drew "or what evidence would satisfy the agency." ECF No. 12, at 13; *see* ECF No. 1 ¶¶ 27, 36-38. According to Mr. Amadioha, the letter's bare-bones statement of reasons "make[s] rebuttal practically impossible." ECF No. 12, at 14. The Secretary points to no case or other authority suggesting otherwise.

"Few decisions of this Court speak to the precise point at which notice becomes constitutionally deficient." *Dodson v. U.S. Capitol Police*, 633 F. Supp. 3d 235, 269 (D.D.C. 2022). But a survey of due process claims in similar contexts indicates that Mr. Amadioha has at least plausibly alleged that the notice he received was too cursory to afford a meaningful opportunity to respond by filing a new application with adequate documentation. *See* 22 C.F.R. § 51.65(b) (requiring an applicant who seeks an adjudication of his entitlement to a passport to submit a new application). For example, in *Sabra ex rel. Baby M v. Pompeo*, 453 F. Supp. 3d 291 (D.D.C. 2020), the plaintiff parents sought a passport for their baby on the basis that the baby needed "urgent medical treatment in the United States." *Id.* at 298. But the parents "did not provide any travel plans" for the baby's "urgent medical care," nor did they provide "written medical records to substantiate Baby M's medical condition." *Id.* Accordingly, the Embassy did not excuse the baby's lack of attendance at the passport interview, which is required by regulation, 22 C.F.R. § 51.28(a)(1), and the parents declined the Embassy's offer that they reapply and bring the baby to the passport interview, *Sabra*, 453 F. Supp. 3d at 298. Additionally, the Embassy requested evidence of the baby's maternity given the "advanced age" of the purported mother and

then, "[d]ue to the indicia of fraud and inconsistencies in the submissions," the Embassy extended the deadline for the plaintiffs to provide additional evidence. *Sabra*, 453 F. Supp. 3d at 298. On that record, the court concluded that the government had satisfied its procedural due process requirements because it provided the parents with both a written notification communicating the deficiencies in the application and the opportunity to cure those deficiencies. *Id.* at 317-18.

In *Gonzalez Boisson*, the court concluded that the government's passport revocation letter was sufficient because it stated the legal basis for the revocation and "substantiated the allegation that Gonzalez Boisson's passport was obtained illegally, fraudulently, or erroneously by citing specific documents demonstrating that [a] signed statement in support of [the plaintiff]'s passport application contained false information." 459 F. Supp. 3d at 18. And in *Abdulla v. Cucinnelli*, 840 F. App'x 827 (6th Cir. 2020), the Sixth Circuit declined to find a due process violation where an agency "explained why it found the existing evidence insufficient and what types of evidence [the plaintiff] needed to submit" and, in its final decision, "listed each piece of additional evidence and explained piece-by-piece why that evidence failed to meet [the plaintiff's] burden of showing eligibility." *Id.* at 840.

Cases like *Sabra*, *Gonzalez Boisson*, and *Abdulla* demonstrate why Mr. Amadioha has sufficiently alleged a procedural due process claim sufficient to withstand the Secretary's motion to dismiss. While the Embassy's February 2023 letter denying Mr. Amadioha's passport application indicates the basis for the denial—that the information Mr. Amadioha provided under 22 C.F.R. § 51.45 was "not sufficient to establish [his U.S.] citizenship"—the letter lacks factual specificity about why the documentation was insufficient and what additional documentation Mr. Amadioha could provide to satisfy the regulatory standard. ECF No. 1-2, at 4.

To be sure, some bases for denial may be so straightforward that merely citing the relevant statute or regulation provides constitutionally sufficient notice. *See, e.g.*, *Whitfield v. U.S. Sec'y of State*, 853 F. App'x 327, 330 (11th Cir. 2021) (per curiam) (concluding that the plaintiff received adequate process in the denial of his passport renewal application when (1) the application form expressly stated that "'failure to provide the information requested on this form . . . could result in the denial of your application,'" (2) "the Secretary informed [the plaintiff] of the deficiency" of his application "and advised him of the steps necessary to amend the application," and (3) "the Secretary specified the statutory and regulatory basis for the denial" (first alteration in original)). But where the relevant agency fails to engage with the purported deficiencies in an application—or provides a bare-bones statement that is tantamount to providing no explanation at all—a plaintiff may sufficiently allege a procedural due process claim. *See Carmichael v. Pompeo*, 486 F. Supp. 3d 360, 373-74 (D.D.C. 2020) (concluding that two plaintiffs had alleged a procedural due process claim when they failed to provide a Social Security number for religious reasons, but the Secretary's denial provided only the opportunity to submit the requested information and failed to engage with the request for a religious accommodation), *aff'd in part, appeal dismissed as moot in part sub nom. Carmichael v. Blinken*, No. 23-5111, 2024 WL 2768384 (D.C. Cir. May 30, 2024); *see also Ass'n of Cmty. Orgs. for Reform Now v. Fed. Emergency Mgmt. Agency*, 463 F. Supp. 2d 26, 35 (D.D.C. 2006) (concluding that an agency's notices failed to comply with due process because the notices listed a single phrase as the basis for denial and referred the plaintiffs to a "vague and nonindividualized" explanatory guide).

At bottom, procedural due process requires the government to provide an individual "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Mr. Amadioha has plausibly

alleged that the Secretary's denial was so cursory that it deprived him the minimal information necessary to prepare a meaningful response. Accordingly, the court will deny the Secretary's motion to dismiss Count II.[5]

**C. Declaratory Judgment Act (Count III)**

Mr. Amadioha seeks "[a] declaration" from this court that he is a United States citizen by birth under 8 U.S.C. § 1401(a) and the Fourteenth Amendment of the U.S. Constitution and a declaration that the Secretary's February 2023 denial of his passport was unlawful. ECF No. 1 ¶¶ 41-42, 44. The Secretary argues only that the Declaratory Judgment Act "does not provide an independent cause of action," meaning that the court would need to dismiss Count III if it dismissed Counts I and II. ECF No. 11, at 11. In light of the court's conclusions that Mr. Amadioha has stated claims under the APA and the Fifth Amendment, and because the Secretary makes no other arguments seeking dismissal of the Declaratory Judgment Act count at this juncture, the court will deny the Secretary's motion to dismiss Count III.

[5] The Secretary also argues that Mr. Amadioha fails to state a substantive due process claim. ECF No. 11, at 9-11. But Mr. Amadioha's complaint and opposition brief both make clear that Mr. Amadioha intends only to bring a *procedural* due process claim. *See* ECF No. 1 ¶¶ 36-37; *see also* ECF No. 12, at 10-14.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 11, is **DENIED**. It is further **ORDERED** that Defendant shall file an answer to Plaintiff's Complaint, ECF No. 1, on or before October 13, 2026. *See* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: September 28, 2026